## HERREN v. HOLLINGSWORTH.
### No. 11356.

Court of Civil Appeals of Texas. Galveston.
March 26, 1942.

Rehearing Denied April 16, 1942.

Edwin C. Thomas and C. C. Carsner, both of Victoria, and W. B. Lewis, of Houston, for appellant.

Wm. G. B. Morrison, of Houston, and S. G. Sample, of Edna, for appellee.

MONTEITH, Chief Justice.

This action was brought by appellant, Hubert B. Herren, for the recovery of damages alleged to have been sustained by reason of the failure of appellee, L. R. Hollingsworth, to comply with the terms of a contract, evidenced by two letters, to execute and enforce a contract to drill an oil well on land belonging to appellee in Jackson County, Texas.

Appellant alleged that, at all times pertinent to this cause of action, he was a real estate broker engaged in the selling of land and oil, gas and mineral leases and the procuring of drilling contracts for the exploration of land for oil, gas and other minerals on a brokerage basis; that appellee represented to him that he was the owner of certain land in Jackson County, Texas, and listed said land with him for the purpose of his procuring some one to drill an oil or gas well on the land in accordance with the provisions of the two letters above referred to; that thereafter he had procured the Texon Drilling Company to drill a well on said land in accordance with the terms of said contract and that appellee had failed and refused to comply with the terms of his said agreement. He alleged that, as part of his compensation and commission for the procurement of said drilling contract, he was to receive 25% of the acreage that would be left of said land after a Revised Texas Standard Form No. 88, Oil, Gas and Mineral Lease had been given on so much thereof as would be necessary to procure a contract for drilling said well. Appellant alleged that, in addition to the compensation and commission set out in said written contract, it was understood that he should acquire oil, gas and mineral leases for himself on land contiguous to appellee's land, and that pursuant to said agreement he had acquired 22 tracts of land aggregating approximately 3,000 acres on lands other than appellee's, such leases being conditioned upon the commencement of the drilling of the oil well on appellee's land. He also sought damages for loss of the profits he would have made from the sale of these leases by reason of the fact that they were rendered valueless by reason of appellee's failure to enter into and enforce said drilling contract.

Appellee answered by verified denial of all allegations in appellant's petition except as to the signing of two letters, on which the alleged contract is based, and by special exceptions in which he urged, among other exceptions, that the contract upon which appellant relied was void in that it was in violation of the Securities Act; that the damages sought by appellant were within the prohibitions of the statute of frauds and that appellant's cause of action was barred by the two-year statute of limitations.

Upon a hearing upon appellee's special exceptions, the trial court sustained the three exceptions above referred to and dismissed appellant's suit. He has appealed from this action of the court.

The letters in question read:

"November 19, 1936.
"Mr. Hubert Herren,
"Harlingen, Texas.
"Dear Sir:
"For and in consideration of services rendered and to be rendered, this is to advise you that you have an option for a period of ninety (90) days from this date to perfect a drilling contract on a tract of land I own in Jackson County, Texas, described as follows: The Eli Mercer Grant, containing 4336.5 acres more or less, and subject to the following conditions.

"That you negotiate a drilling contract for the drilling of an oil well to a depth of 6500 feet and this is to be supplemented by a drilling lease on a revised 88 Standard Texas Form, with a specific drilling obligation attached thereto.

"Yours very truly,
"L. R. Hollingsworth."

"November 10, 1936.
"Mr. L. R. Hollingsworth,
"Harlingen, Texas.
"Dear Sir:
"Whereby you have given me a ninety day option on your land in Jackson County, Texas, described as a certain 4336.5 acres in the Eli Mercer Grant, I am in turn giving you this letter.

"This is to advise for and in consideration of a drilling contract for a period of ninety days for an oil and gas well to a depth of 6500 feet that you have given to me, this is to advise the following.

"That if and when I am able to secure a drilling contract on your land, that I will present said drilling proposal to you, and the selection of the drilling contractor shall be made by you. That, until such a date as we shall enter into a contract by and between ourselves pertaining to how the deal shall be handled, is entirely to be decided by you, in other words, your word is to be final, without question.

"Whereas, for and in consideration of the drilling contract you have given me this date I hereby agree to accept twenty five (25) per cent of the NET monies and acreage left after a drilling contract and the cost of the well has been deducted. Of course this only includes the leases and money through the promotion of an oil or gas well and does not in any way include any interest in the owners one-eighth royalty.

"Hubert Herren,
"HH/fw       L. R. Hollingsworth."

At the time the trial court passed on appellee's special exceptions, paragraph 1 of appellant's trial petition read: "That the plaintiff, prior to and on November 10, 1936, and at all times pertinent to this cause of action, was a real estate broker, engaged in the buying and selling of land and the procuring of drilling contracts for the exploration of lands for oil, gas and other minerals, on a brokerage basis, all of which was known to the defendant on said November 10, 1936, and at all times pertinent thereto; and that defendant, L. R. Hollingsworth, at all times pertinent to this cause of action, was neither temporarily nor permanently engaged in the business of buying and/or selling securities within the meaning and/or purview of Art. 600a, R.C.S.1925, known as the Securities Act."

Later, and after the court had announced his conclusions and judgment, appellant, with the court's consent, struck from said paragraph of said petition the words "and in the handling of oil, gas and mineral leases and land", and interlined in place thereof the words "and that the defendant, L. R. Hollingsworth, at all times pertinent to this cause of action, was neither temporarily nor permanently engaged in the business of buying and/or selling securities within the meaning and/or purview of Art. 600a, R.C.S.1925, known as the Securities Act."

Appellant did not plead that he was licensed or registered as required by the Securities Act. He stipulated in open court that he was not so licensed or registered at the time of the transaction in question.

The controlling question presented in the appeal is whether the facts pleaded by appellant bring the transaction in question within the purview of the Securities Act. Vernon's Annotated Civil Statutes, Article 600a; Vernon's Annotated Penal Code, Article 1083a.

The Securities Act provides that its terms and provisions, applicable to this case, shall have the following respective meanings:

Section 2(a): "The term 'Security' or 'Securities' shall include * * * any instrument representing any interest in or under an oil, gas or mining lease, fee or title."

Section 2(b): "The term 'company' shall include a corporation, a person, joint stock

company, partnership, association, company * * *."

Section 2(c): "The term 'dealer' shall include every person * * * who engages in this State, either for all or part of his * * * time, directly or through an agent, in selling, offering for sale or delivery or soliciting subscriptions to, or orders for, or undertaking to dispose of, or to invite offers for, or dealing in any other manner in any security or securities within this State."

Section 2(e): "The terms 'sale,' or 'offer for sale' or 'sell' shall include every disposition, or attempt to dispose of a security for value. The term 'sale' means and includes contracts and agreements whereby securities are sold * * * for money. * * * The term 'sell' means any act by which a sale is made, and the term 'sale' or 'offer for sale' shall include * * * a solicitation of sale, an attempt to sell, or an offer to sell, directly or by an agent * * * or otherwise, · * * *."

Section 3: "Except as hereinafter in this Act specifically provided, the provisions of this Act shall not apply to the sale of any security when made in any of the following transactions and under any of the following conditions, and the company or person engaged therein shall not be deemed a dealer within the meaning of this Act * * *."

Section 3(c): "Sales of securities made by, or in behalf of a vendor in the ordinary course of bona fide personal investment of his personal holdings * * *."

Section 12 provides: "Except as provided in Section 3 of this Act, no person, firm, corporation or dealer shall, directly or [indirectly] * * * offer for sale, sell or make a sale of, any securities in this State without first being registered as in this Act provided."

Section 30 of the Securities Act, Vernon's Annotated Penal Code, Article 1083a, reads: "Any dealer, agent, salesman, principal, officer, or employee, who shall, within this State, sell, offer for sale or delivery, solicit subscriptions to or orders for, dispose of, invite offers for, or who shall deal in any other manner in any security or securities, without being registered as in this Act provided, or who shall within this State, sell, offer for sale or delivery, solicit subscriptions to and orders for, dispose of, invite orders for, or who shall deal in any other manner in any security or securities issued after the effective date of this Act without having secured a permit as herein provided * * * shall be deemed guilty of a felony * * *."

While there has been in the past some confusion as to the construction to be placed on certain provisions of the Securities Act, these questions have, in so far as they relate to facts similar to those in the instant case, been set at rest by the very comprehensive opinion of the Supreme Court in the case of Kadane v. Clark, 135 Tex. 496, 143 S.W. 2d 197. In that case, the Supreme Court, speaking through Mr. Justice Sharp, held a contract similar in all material respects to that involved in the instant case, to be unenforceable as violative of the Securities Act. In that case plaintiff sought to recover a specified sum as commission for services rendered in procuring a purchaser for an oil and gas leasehold interest. The defendants, who were the owners of both the fee and the mineral estate in the land, contended that plaintiff having failed to comply with the Securities Act, the contract under which he sought to recover was unenforceable. The Court of Civil Appeals upheld plaintiff in his contention that he came within the exemption expressed in Section 3(c) of the Act, which exempts "sales of securities made by, or in behalf of a vendor in the ordinary course of bona fide personal investment of his personal holdings, or change of such investment, if such vendor is not otherwise engaged either permanently or temporarily in selling securities." The Supreme Court, in its opinion, held that an oil and gas lease was a security within the contemplation of the Securities Act and that since plaintiff, who had not procured a license under the provisions of the Act, was neither the owner of the fee nor interested in the title to the oil and gas lease in question, he was not entitled to the emption claimed, and that the contract was in violation of the Securities Act.

In following the rule laid down by the Supreme Court in the case of Kadane v. Clark, the Fort Worth Court of Civil Appeals in the case of Hults v. Fowler, 148 S. W.2d 249, 250, in passing on a similar state of facts, said in its opinion: "In the light of the holding and interpretation given by our Supreme Court, we are unable to see how any 'agent' of another, any 'salesman' or any 'solicitor', it matters not by whom he is employed, can make a valid contract to 'deal in any other manner in any security or securities', as defined by the act, without complying with the provisions of the act, un-

less he can come squarely within the exceptions provided for in the act."

■ In the instant case it is undisputed that appellant had not qualified as a dealer in securities and had not procured a license under the provisions of the Securities Act at the time of the transactions in question, and that he was neither the owner of the fee nor the mineral estate in appellee's land on which he claims to have procured a drilling contract. The wording and intent of the letters on which he relies for recovery not only contemplates a "drilling contract", but expressly provides for a "drilling lease on a Revised 88 Standard Texas Form". It follows that if appellant purchased or acquired oil, gas and mineral leases and sold or attempted to sell them, or any of them, and if, as he pleads, he did procure a person who was willing to enter into a lease contract to drill an oil well on appellee's land, upon both of which he bases his claim for damages, his asserted loss logically arose from the fact that he did not or could not sell these leases, and having failed to procure a license under the Securities Act, the contract upon which he relies for recovery is in violation of the terms of the Act and is not enforceable.

The judgment of the trial court is affirmed.

Affirmed.