HUBERT HERREN V. L. R. HOLLINGSWORTH.

No. 7994. Decided January 13, 1943.
(167 S. W., 2d Series, 735.)

*Edward C. Thomas* and *C. C. Carsner,* both of Victoria, and *W. B. Lewis,* of Houston, for petitioner.

The trial court erred in holding that a contract to drill a well is such a contract as to come within the provisions of Article 600a of the Securities Act. The Court of Civil Appeals also erred in affirming that position. Culver v. Cockburn, 127 S. W. (2d) 328; Cosner v. Hancock, 149 S. W. (2d) 239.

*Wm. G. B. Morrison,* of Houston, and *S. G. Sample,* of Edna, for respondent.

The petitioner was at the time involved engaged in the business of buying, selling and dealing in oil and gas and mineral leases and that is why respondent listed the land with him, and being in such business he was subject to the provisions of the Securities Act and not having complied with same he was without any right to set up in his application any new matters or statements which do not appear in his pleadings or in the record. Atwood v. State, 121 S. W. (2d) 353; Sunflower Lbr. Co. v. Turner Supply Co., 158 Ala. 191, 48 So. 510; Muse v. State, 132 S. W. (2d) 596.

MR. JUSTICE SHARP delivered the opinion of the Court.

Hubert Herren instituted this suit against L. R. Hollingsworth for damages resulting from the alleged failure of Hollingsworth to comply with the terms of a written agreement concerning a contract entered into by Hollingsworth and the Texon Drilling Company to drill an oil or gas well on land owned by Hollingsworth. The trial court sustained certain exceptions of Hollingsworth, and upon Herren's refusal to amend dismissed the suit. Herren appealed to the Court of Civil Appeals, and the judgment of the trial court was affirmed. 161 S. W. (2d) 511.

This Court granted a writ of error, based upon the ground that the trial court erred in holding that a contract to drill a well is such a contract as to come within the provisions of Article 600a of the Securities Act, Vernon's Annotated Civil Statutes. Hence the sole question presented for decision here is whether petitioner was a dealer in securities within the meaning of the Securities Act, and was required to allege in his petition that he was duly licensed and registered in compliance with that Act.

The agreement sued on consists of two letters, contemporaneously executed by the parties to the suit as integral parts of one and the same transaction, which are as follows:

"November 10, 1936.

Hr. Hubert Herren,
Harlingen, Texas.
Dear Sir:

For and in consideration of services rendered and to be rendered, this is to advise you that you have an option for a period of ninety (90) days from this date to perfect a drilling contract on a tract of land I own in Jackson County, Texas, described as follows: The Eli Mercer Grant, containing 4336.5 acres more or less, and subject to the following conditions.

That you negotiate a drilling contract for the drilling of an oil or gas well to a depth of 6500 feet and this is to be supplemented by a drilling lease on a revised 88 Standard Texas Form, with a specified drilling obligation attached thereto.

Yours very truly,

(Signed)   L. R. HOLLINGSWORTH."

"November 10, 1936.

Mr. L. R. Hollingsworth,
Harlingen, Texas.
Dear Sir:

Whereby you have given me ninety day option on your land in Jackson County, Texas, described as a certain 4336.5 acres in the Eli Mercer Grant, I am in turn giving you this letter.

This is to advise for and in consideration of a drilling contract for a period of ninety days for an oil and gas well to a depth of 6500 feet that you have given to me, this is to advise the following.

That if and when I am able to secure a drilling contract on your land, that I will present said drilling proposal to you, and the selection of the drilling contractor shall be made by you.

That until such a date as we shall enter into a contract by and between ourselves pertaining to how the deal shall be handled is entirely to be decided by you, in other words, your word is to be final, without question.

Whereas, for and in consideration of the drilling contract you have given me this date I hereby agree to accept twenty five (25) per cent of the NET monies and acreage left after a drilling contract and the cost of the well has been deducted. Of course this only includes the leases and money through the promotion of an oil or gas well and does not in any way include any interest in the owner's one-eighth royalty.

(Signed) HUBERT HERREN,

HH/FW                              L. R. HOLLINGSWORTH."

Petitioner alleged that at all times pertinent to this suit he was a real estate broker, engaged in the buying and selling of land, and the procuring of drilling contracts for the exploration of lands for oil, gas, and other minerals, on a brokerage basis, and that the respondent was neither temporarily nor permanently engaged in the business of buying or selling securities within the meaning of the Securities Act, but was the owner of the 4336.5 acres described in the agreement; that in reliance upon the agreement, and within ninety days of the date thereof, petitioner procured the Texon Drilling Company to drill an oil or gas well on said land according to the terms of the agreement, and that respondent entered into a contract with that company for the drilling of a well on the premises; that petitioner complied with his part of the agreement, and is entitled to receive twenty-five per cent. of the cash bonus that might have been received by respondent if the drilling contract had been performed; that his compensation is dependdent upon specific performance of the drilling contract, but that, through no fault of petitioner, it was not carried out or performed; and that, although it was a legal, binding, and enforcible contract, capable of performance by the Texon Drilling Company, respondent failed to enforce specific performance thereof, and that such failure was the proximate cause of petitioner's damages.

The only part of respondent's answer we need here refer to is Exception No. 4, wherein he specially excepts to petitioner's petition as stating no cause of action, because it failed to allege that he was a qualified dealer in securities and duly licensed and registered as required by the provisions of the Securities Act, Article 600a, Vernon's Annotated Texas Civil Statutes.

The pertinent parts of the Securities Act, involved in this decision, read as follows:

Section 2 (a) : "The term 'security' or 'securities' shall include * * * any instrument representing any interest in or under an oil, gas or mining lease, fee or title, * * *."

Section 2 (b) : "The term 'company' shall include a corporation, a person, joint stock company, partnership association, company, * * *."

Section 2 (c) : "The term 'dealer' shall include every person * * * who engages in this State, either for all or part of his * * * time, directly or through an agent, in selling, offering for sale or delivery or soliciting subscriptions to, or orders for, or undertaking to dispose of, or to invite offers for, or dealing in any other manner in any securities or securities within this State. * * *."

Section 2(e) : "The term 'sale' or 'offer for sale' or 'sell' shall include every disposition, or attempt to dispose of a security for value. The term 'sale' means and includes contracts and agreements whereby securities are sold * * * for money, * * *. The term 'sell' or means any act by which a sale is made, and the term 'sale' or 'offer for sale' shall include * * * a solicitation of sale, an attempt to sell, or an offer to sell, directly or by an agent * * * or otherwise, * * *."

Section 3: "Except as hereinafter in this Act specifically provided, the provisions of this Act shall not apply to the sale of any security when made in any of the following transactions and under any of the following conditions, and the company or person engaged therein shall not be deemed a dealer within the meaning of this Act; * * *."

Section 3 (c) : "Sales of securities made by, or in behalf of a vendor in the ordinary course of bona fide personal investment of his personal holdings * * *."

Section 12 provides: "Except as provided in Section 3 of this Act, no person, firm, corporation or dealer shall, directly or through agents or salesmen, offer for sale, sell or make a sale of, any securities in this State without first being registered as in this Act provided. * * *."

Section 30 of the Securities Act, Vernon's Annotated Penal Code, Article 1083a, reads: "Any dealer, agent, salesman, principal, officer, or employee, who shall, within this State, sell,

offer for sale or delivery, solicit subscriptions to or orders for, dispose of, invite offers for, or who shall deal in any other manner in any security or securities, without being registered as in this Act provided, or who shall within this State, sell, offer for sale or delivery, solicit subscriptions to and orders for, dispose of, invite orders for, or who shall deal in any other manner in any security or securities issued after the effective date of this Act without having secured a permit as herein provided, * * * shall be deemed guilty of a felony * * *."

The Court of Civil Appeals affirmed the judgment of the trial court in sustaining respondent's special exception to petitioner's petition, and based its decision on the holding of this Court in Kadane v. Clark, 135 Texas 496, 143 S. W. (2d) 197, on the ground that the facts of the two cases are similar. In our judgment the facts in the two cases are materially different. In the Kadane case the evidence clearly showed that all of the defendants were engaged in the oil business. It also appeared that the plaintiff was active in undertaking to sell various oil and gas leases. Kadane, the vendor, was not a farmer or a ranchman, as is Hollingsworth, but was a dealer in oil and gas leases. He was not the surface owner, but a lessee and owner of a mineral lease executed to him by a Mrs. Mangold, which he sold to the Sunray Oil Company, and Clark was the procuring cause of that sale. Clark alleged that he was a geologist, and, in addition to that business, was engaged in the oil business; that he contacted Kadane, and induced him to list his Mangold lease with him for the purpose of finding a buyer thereof; that he did procure a purchaser, and was thereby entitled to receive the customary commission paid brokers for performing such services. The testimony shows that as to the Mangold lease owned by Kadane, Clark was a dealer in oil and gas leases within the meaning of the Securities Act. In this case Hollingsworth did not have for sale, nor did he authorize Herren to sell or offer for sale, a mineral lease or any other instrument representing an interest in the minerals, but sought a contract to develop his ranch. In this case Herren had no instrument to sell, and was not authorized by Hollingsworth to sell anything, but was empowered only to secure the services of a driller who would agree to explore Hollingsworth's ranch for a consideration later to be decided on by the driller and Hollingsworth.

In the Kadane case, Clark also contended that an oil and gas lease was not a "security" within the meaning of the Securities Act; but this Court held to the contrary, following Atwood v. State, 135 Texas Crim. R. 543, 121 S. W. (2d) 353; Muse v. State, 137 Texas Crim. R. 622, 132 S. W. (2d) 596, by the Court of Criminal Appeals. In the Atwood case it appears from the opinion of the court that there was no question but that Atwood was a "dealer" in securities. The controlling question was whether or not an oil and gas lease was a "security" within the meaning of the Securities Act. The Muse case merely holds that an "assignment" of an oil and gas lease is also a "security" within the meaning of the Securities Act.

The Court of Civil Appeals in this case also based its decision upon the holding in Hults v. Fowler, 148 S. W. (2d) 249, by the Court of Civil Appeals. However, that case was reversed by this Court in Fowler v. Hults, 138 Texas 636, 161 S. W. (2d) 478, after the opinion of the Court of Civil Appeals was written in the present case. This Court granted a writ of error in the Hults v. Fowler case, and the judgment of the lower court was reversed. Fowler, the alleged dealer, contended that he was merely an agent of Hults, engaged in the purchase of oil and gas leases from the land owners for Hults, the prospective buyer. On the other hand, Hults contended that Fowler was an agent and salesman for the land owners. The Court of Civil Appeals held that it mattered not by whom Fowler was employed, that he could not make a valid contract unless he came within the exceptions provided for in the Securities Act. The jury found that Fowler was not a dealer in securities.

This Court concluded that it was material whether Fowler represented the "buyers" or the "sellers," and held that the jury, in effect, found that Fowler was acting for Hults, the buyer, in procuring the execution of the leases—that is, buying them rather than selling them, and that the provisions of the Securities Act relate to sales and sellers of securities, and not to purchasers or buyers. We quote from the opinion of this Court rendered in that case the following:

"In view of the jury's verdict, it is unnecessary to decide, and we do not decide, whether Fowler would have been a dealer in securities within the meaning of the statute, had he been representing the land owners in an effort to induce Hults to accept and pay for oil and gas leases from the land owners

as lessors to Hults as lessee. In this case the oil and gas lease had not been executed when the negotiations between Fowler and Hults were begun. The plaintiff in Kadane v. Clark, 135 Texas 496, 143 S. W. (2d) 197, and the accused in Atwood v. State, 135 Texas Cr. R. 543, 121 S. W. (2d) 353, were engaged in finding purchasers for existing leases or interests in existing leases. * * *

* * * * * * *

"All the provisions of the Act above quoted and referred to relate to sales and sellers of securities and not to purchasers or buyers. Nowhere in the Act is there any language which might be construed as disclosing an intention to require purchasers of securities to register or to prohibit one from buying securities without registering, * *."

Section 2 (a) of Article 600a, in so far as it pertains to a mineral lease, defines a "security" as a "certificate or any instrument representing any interest in or under an oil, gas or mining, fee or title." In this case Herrin was not authorized to sell or buy. His authority was limited to finding the services of a driller acceptable to Hollingsworth, a driller willing to make a contract with Hollingsworth to explore his ranch for oil and gas. The agreement between the parties did not empower Herren to agree to any of the terms of the drilling contract, so as to bind Hollingsworth, because the selection of the contractor and the making of the contract were left to the discretion of Hollingsworth. The agreement between the parties in this suit did not refer to an instrument in existence, but to one that might or might not be executed in the future, and all the terms of which would be decided by Hollingsworth and the contractor, whoever he might be. Herren had nothing to sell or to offer for sale, but was authorized merely to find a contractor who would confer with Hollingsworth; and after necessary negotiations were completed, and at some future date, the contractor and Hollingsworth would execute a contract to drill a well for exploration purposes, in consideration of a lease conveying an interest in the minerals—the terms of which and the number of acres to be included were all to be decided upon by the parties at some future time, provided they could reach an agreement.

In our judgment, the allegations contained in petitioner's petition do not show, as a matter of law, that his cause of

action was condemned by the Securities Act. The trial court erred in sustaining the exception to the petition. Therefore the judgment of the Court of Civil Appeals is reversed, and this cause is remanded to the trial court for further proceedings.

Opinion delivered January 13, 1943.